# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CIVIL ACTION NO. 3:24-CV-00039-DJH-CHL

**MICHAEL BRAUN,**                                                           **Plaintiff,**

**v.**

**NORTON HEALTHCARE, INC.,**                                   **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Compel filed by Plaintiff Michael Braun ("Plaintiff"). (DN 36.) Defendant Norton Healthcare, Inc. ("Defendant") has filed a Response. (DN 37.) Plaintiff has filed a Reply. (DN 38.) Therefore, this Motion is ripe for review.

### I. Background

#### A. Factual Background

Plaintiff was a staff pharmacist for Defendant. (DN 1 at ¶ 12.) Defendant assigns two pharmacists at its main pharmacy to work staggered shifts during the second shift. (Id. at ¶ 14.) One pharmacist works from 2:00 PM to 10:00 PM and the other works from 2:30 PM to 10:30 PM. (*Id.*) This means that, for a total of one hour each shift, one of the pharmacists may be working alone, with each pharmacist spending roughly thirty minutes alone. (*Id.* at ¶ 15.) One of the responsibilities of a staff pharmacist is to respond to "codes," which are medical emergencies that may require a staff pharmacist to formulate a medication bedside. (Id. at ¶¶ 20-21.) Thus, a pharmacist working alone would need to be the one to respond to a code.

Plaintiff was diagnosed with spinocerebellar ataxia type 2 ("SCA2"), a neurological disorder that causes difficulty with movement, balance, and coordination. (DN 1 at ¶ 17.) Plaintiff disclosed his illness to his colleagues and requested that he not be assigned as the only pharmacist

on duty. (*Id.* at ¶¶ 19-20.) Such an accommodation would ensure that he would not have to respond to codes. (*Id.*) Although Plaintiff did not receive a response from his first request, he made an additional request through Unum, Defendant's third-party administrator. (*Id.* at ¶ 26.)

Defendant told Plaintiff that it could not grant his preferred accommodation because, it explained, it would be forced to eliminate several essential functions of his position. (DN 37, at PageID # 205.) Defendant further told Plaintiff that it could not guarantee him he would never be faced with a situation where he would not be required to respond to a code. (*Id.*) Therefore, Defendant instead proposed that Plaintiff be placed on Job Placement Leave. (*Id.*) Job Placement Leave allows an individual to remain an employee while they can apply for other positions with Defendant as an internal candidate, although the leave itself is unpaid. (DN 36-1, at PageID # 121.)

Plaintiff remained on Job Placement Leave for sixty days without securing another position. (DN 37, at PageID # 205.) Defendant extended his leave period by another thirty days, but Plaintiff again did not secure another position. (*Id.*) Defendant then terminated Plaintiff. (*Id.*) Plaintiff is now suing Defendant for failing to engage in the interactive process as required by the Americans with Disabilities Act ("ADA"), failing to provide a reasonable accommodation under the ADA, discrimination, and retaliation. (DN 1.)

    **B.**    **Procedural History**

Plaintiff propounded various discovery requests on Defendant. At issue are the following:

> Interrogatory No. 7: Please describe in detail the role of Unum in responding to Braun's 2022 and 2023 requests for an accommodation.
> Interrogatory No. 8: Please identify every Norton employee who has been placed on "job seeking leave" from January 1, 2015 through the present and provide the following information:
>     a.    The date each was placed on job seeking leave;
>     b.    The position they held prior to being placed on job seeking leave;
>     c.    The date their job seeking leave ended;

>    d. The reason their job seeking leave ended; and
>    e. The position(s) they were offered at Norton, if any, during their job seeking leave.
>
> Request For Production No. 21: Please produce all documents that evidence any contractual agreement between Unum and Norton and the scope of services provided by Unum to Norton from 2020 through the present.
>
> Request For Production No. 24: Please produce the code charting for the pediatric incident in January 2023. Plaintiff does not seek the name or other identifying information regarding the patient but seeks any documents that reflect the identity of the pharmacist who responded to the code.

(DN 36-1.) The Court conducted a telephonic status conference to discuss the requested information. (DN 34). The Court granted Plaintiff permission to file the instant Motion. (*Id.*)

## II. Discussion

### A. Standard

Matters of discovery are within the sound discretion of the trial court. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). The reviewing court reviews a ruling by the trial court limiting or denying discovery under an abuse of discretion standard. *Id.* An abuse of discretion exists when the reviewing court is "firmly convinced" that a mistake has been made. *Bush v. Rauch*, 38 F.3d 842, 848 (6th Cir. 1994).

The scope of discovery includes any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). A party may request any other party to produce any designated documents or electronically stored information within the responding party's possession and within the scope of discovery. *Id.* at 34(a)(1)(A). A party may also serve on any other party an interrogatory that may relate to any matter that may be inquired into under Rule 26(b). *Id.* at 33(a). A party may move to compel a discovery response if the other party has failed to produce the requested documents or to answer an interrogatory. *Id.* at 37(a)(3)(B).

Information must be relevant to be discoverable. Fed. R. Civ. P. 26(b)(1). The Supreme Court has interpreted relevance broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on," the claims or defenses of any party. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Essentially, a request for discovery seeks relevant information if there is any possibility that the information sought may be relevant to a claim or defense of any party in the action. *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007). When an objection to relevance is raised or the relevance of the information sought is not apparent, the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the action. *First Mercury Ins. Co. v. Babcock Enters., Inc.*, No. 3:21-CV-00672-GNS-CHL, 2024 WL 3939604, at *7 (W.D. Ky. Aug. 26, 2024). When the discovery material sought appears to be relevant, the party who is resisting production bears the burden of establishing that the material is not relevant, or that it is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure. *Invesco*, 244 F.R.D. at 380. This party bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury. *Id.*

    **B.**    **List of employees on job placement leave**

If an employee has a qualifying disability, the employer is required to provide such reasonable accommodations as will enable him to perform the essential functions of his job. *See* 42 U.S.C. § 12112(b)(5)(A). But an employee is not entitled to a particular reasonable accommodation if another reasonable accommodation is provided. *Trepka v. Bd. of Educ.*, 28 F. App'x 455, 460 (6th Cir. 2002) (citing *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800-01 (6th Cir. 1996)). As such, a plaintiff must demonstrate that the alternative accommodation offered by the defendant was inadequate. *See id.* (citing *Gaines v. Runyon*, 107 F.3d 1171, 1178 (6th Cir. 1997)).

A reasonable accommodation may include "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B). The duty to reassign entails a duty to consider transferring an employee with a disability to a new position within the organization that the employee is otherwise qualified for. *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 257 (6th Cir. 2000). But the employer is not required to create new jobs, displace existing employees from their positions, or violate other employees' rights under a collective bargaining agreement or other non-discriminatory policy to accommodate an employee with a disability. *Id.* Instead, the employer is required to (1) "identify the full range of alternative positions for which the individual satisfies the employer's legitimate, nondiscriminatory prerequisites;" (2) "determine whether the employee's own knowledge, skills, and abilities would enable [him or her] to perform the essential functions of any of those alternative positions, with or without reasonable accommodations;" and (3) "consider transferring the employee to any of these other jobs, including those that would represent a demotion." *See Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 420 (6th Cir. 2020) (quoting *Burns*, 222 F.3d at 257).

Here, Plaintiff intends to argue that Defendant's proposed accommodation was inadequate because Job Placement Leave generally has a low success rate. (DN 36-1, at PageID # 126.) Defendant argues that information concerning other employees is irrelevant because Defendant handles accommodations on a case-by-case basis, accounting for the individual needs of each employee. Defendant is correct that reasonable accommodations are determined on a case-by-case basis, and that a reasonable accommodation for one employee may not be reasonable for another. *Smith v. Pyro Min. Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987). But the Job Placement Program is *the accommodation* Defendant offered Plaintiff. If Defendant knew that Plaintiff was unlikely to find another job within its organization, then a jury may find that, by placing Plaintiff into the

5

program, Defendant was not considering Plaintiff for other positions.  Thus, the Court finds that the requested information is relevant.

Defendant argues that Plaintiff's interrogatory is vague and ambiguous because it is difficult to determine what information Plaintiff is seeking.  (DN 37, at PageID # 208.)  Defendant argues that Plaintiff's interrogatory "seeks an extensive amount of information and documentation related to *every* Norton employee over a ten-year period." (*Id.*) (emphasis in original).  Defendant further argues that the interrogatory requests information about every Norton employee who has ever taken a job seeking leave for any purpose, "presumably a leave including but not limited to a Job Placement Leave." (*Id.*)  Defendant does not articulate how or why the interrogatory is vague, and the Court does not conclude that it is.  A fair reading of the interrogatory reveals that Plaintiff is not, in fact, asking for an "extensive amount of information and documentation related to every Norton employee over a ten-year period," and hyperbolic assertions such as this are not helpful to the Court's analysis.  Nor does the Court see how Plaintiff's request should be limited to information about a specific department, hospital, category of employees, or specific supervisor.  (*Id.*)  Furthermore, to the extent that there is a meaningful difference between "job seeking leave" and "Job Placement Leave," (i.e., if those two phrases are terms of art with distinct meanings), Plaintiff has offered to limit his request to individuals placed into the Job Placement Leave program.  Thus, to alleviate any concerns, the Court will impose that limit.

**C.     Documents relating to Defendant's contract with Unum**

Parties must engage in an interactive process to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.  *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) (citing 29 C.F.R. § 1630.2(*o*)(3)).  Both parties have a duty to participate in good faith.  *Id.*  If the process fails to

6

lead to a reasonable accommodation of the disabled employee's limitations, responsibility will lie with the party that caused the breakdown. *Rorrer v. City of Stow*, 743 F.3d 1025, 1040 (6th Cir. 2014) (citing *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005)).

Plaintiff argues that documents relating to Defendant and Unum's relationship are relevant to determine the role Unum played in both the interactive process as well as denying Plaintiff's requested accommodation.[1] (DN 36, at PageID # 129.) Plaintiff asserts that "it is unclear whether [Defendant] or Unum was reasonable [sic] for engaging in the interactive process on behalf of [Defendant]." (*Id.*) Thus, Plaintiff argues, the requested documentation would bear on who allegedly failed to engage in the mandatory interactive process and who denied his requested accommodation.

To hold a defendant liable under the ADA, the plaintiff must show that the defendant is an employer under the statute. *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 992 (6th Cir. 1997). Although a direct employment relationship provides the usual basis for liability under the ADA, courts have fashioned various doctrines by which a defendant may still be considered an "employer" even though it does not directly employ the plaintiff. *Id.* at 993. Unless third-party administrators directly employ the plaintiff, they are not "employers" under the ADA. *Baron v. Dulinski*, 928 F. Supp. 2d 38, 41 (D.D.C. 2013); *Cf. Zolner v. U.S. Bank Nat'l Ass'n*, No. 4:15-cv-00048, 2015 WL 7758543, at *2 (W.D. Ky. Dec. 1, 2015) (holding that a third-party administrator was not the plaintiff's employer under the Kentucky Civil Rights Act).

Contrary to Plaintiff's assertion, the scope of discovery does not include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may

---

[1] Plaintiff also asserts in his Reply that the documents relating to the contractual agreement between Defendant and Unum are relevant to Plaintiff's allegation that he has a disability. (DN 38, at PageID # 244.) As Plaintiff has raised this argument for the first time in his Reply, the Court will not consider it. *Barany-Snyder v. Weiner*, 539 F.3d 327, 331-32 (6th Cir. 2008).

7

be in the case." (DN 39, at PageID # 239) (quoting *Oppenheimer Fund*, 437 U.S. at 351). The scope is "any nonprivileged matter that is relevant *to any party's claim or defense* and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). This is not a mere semantic difference; it reflects a deliberate choice by the advisory committee to limit the scope of discovery. *Contrast* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment ("As used here, 'relevant' means within the scope of discovery as defined in this subdivision, and it would include information relevant to the subject matter involved in the action if the court has ordered discovery to that limit based on a showing of good cause.") *with* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment ("Information is discoverable under revised Rule 26(b)(1) if it is relevant to any party's claim or defense and is proportional to the needs of the case."). Information that has no bearing on any party's claims or defenses in a case are therefore not discoverable.

Plaintiff argues that the requested information is relevant for two reasons. First, Plaintiff argues that the information will ensure that he has named the proper defendant. Second, Plaintiff argues that the requested information will allow him to develop evidence responsive to an argument that Defendant was not responsible for engaging in the interactive process or for the decision not to accommodate. (DN 36-1, at PageID # 129.) Regarding the first argument, Unum was not Plaintiff's employer. Defendant was Plaintiff's employer. (DN 1, at ¶ 8.) Plaintiff has not provided the Court with any reason to conclude otherwise, nor has he asserted such a claim against Unum, alleging it to be his former employer. Therefore, Plaintiff's first argument fails. Regarding Plaintiff's second argument, Defendant has not made the defense that it cannot be liable under the ADA because Unum was responsible for failing to accommodate Plaintiff. Nor has Plaintiff provided the Court with any authority to suggest that Defendant *could* make such a

8

defense. In fact, the responsibility to accommodate Plaintiff rested with Defendant, his former employer. *See generally* 42 U.S.C. § 12112. The responsibility to participate in an interactive process also rested with Defendant. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010). But even if the parties could provide the Court with some authority to suggest that employers can assert a valid defense based on their delegation of the interactive process to third-party administrators, Defendant here has not asserted such a defense. Therefore, Plaintiff's second argument fails. Aside from these two arguments, it is not apparent to the Court how the requested information is relevant to any claim or defense in this matter. Accordingly, the Court finds that Plaintiff's requested information is not discoverable.

> **D.      Pediatric code chart**

Defendant relies on the January 2023 pediatric code incident for its assertion that Plaintiff could not perform an essential function of the job, namely responding to codes. (DN 36-10, at PageID # 190.) During this incident, Plaintiff allegedly responded to a code but could not perform the required task, meaning that Mark Brown ("Brown") had to step in and respond. (DN 36-1, at PageID # 132.) Plaintiff argues that the chart for this pediatric code incident is necessary to determine what happened. (*Id.*) Defendant argues that because it already disclosed the identity of the pharmacist who assumed responsibility for the code, and the fact that Plaintiff could not work the code alone, the medical record of a pediatric patient "containing the actions taken by the pharmacist who performed the code will not prove or disprove whether Plaintiff could or could not perform the same tasks." (DN 37, at PageID # 211.)

It is not clear whether the pediatric code chart reflects the fact that Plaintiff was unable to respond to the code in question, nor is it clear whether the chart reflects the fact that Plaintiff responded to the code before Brown assumed responsibility. What is clear is that the chart reflects

9

the actions taken by Brown in responding to the code. (DN 37, at PageID # 211.) If Defendant intends to argue that this incident is evidence that Plaintiff could not perform an essential function of the job, then it stands to reason that any documentation as to what actions were taken in carrying out that essential function would be relevant. Therefore, the pediatric code chart is relevant.

Defendant argues that HIPAA prevents it from disclosing the pediatric chart to Plaintiff. Plaintiff argues that the parties have entered into a confidentiality agreement that satisfies the requirements of 45 C.F.R. § 164.512(e)(ii)(B). Defendant responds that the confidentiality agreement at issue is not sufficient under § 164.512(e)(ii)(B) because it is not technically a protective order. This argument ignores the fact that a covered entity may disclose protected health information in response to an order of a court even without a qualifying protective order. *Id.* § 164.512(e)(1)(i).

The Court recognizes that there are "significant privacy concerns" implicated when it orders a covered entity to disclose a non-party's private medical information. *Stumph v. Spring View Physician Pracs., LLC.*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *4 (W.D. Ky. Jan. 7, 2020). Therefore, although HIPAA does not prevent disclosure in this instance, it does limit disclosure in response to a court order to "only the protected health information expressly authorized by such order." 45 C.F.R. § 164.512(e)(1)(i). In the past, the Court has ordered that such information be disclosed subject to protective conditions. *Stumph v. Spring View Physician Pracs., LLC.*, No. 3:19-CV-00053-LLK, 2021 WL 395762, at *6 (W.D. Ky. Feb. 4, 2021). Therefore, that is the approach the Court will take.

### E. Reasonable Expenses

Under Rule 37, if a court grants a Motion to Compel in part, then the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard,

apportion the reasonable expenses for the Motion. Fed. R. Civ. P. 37(a)(5)(C). When parties have taken legitimate positions, and the court grants a motion to compel in part, then courts generally conclude that justice requires that each party be responsible for their own fees and costs. *Benavidez v. Sandia Nat'l Lab'ys*, 319 F.R.D. 696, 720 (D.N.M. 2017). As the Court has decided to grant Plaintiff's Motion in part, and both parties have advanced reasonable positions, the Court does not believe it is appropriate to award Plaintiff payment for his expenses in prosecuting this Motion.

### F. The Stay

The Court also notes that it has previously ordered this case be stayed pending the outcome of this Motion. (DN 40.) As the Court has decided to grant this Motion in part, the Court will instruct the parties to confer regarding a renewed litigation schedule and file their jointly proposed deadlines with the Court.

### III. Order

For the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Motion to Compel (DN 36) is **GRANTED IN PART**.

(1) **No later than January 2, 2026**, Defendant shall provide Plaintiff with a list of every Norton employee who has been placed on Job Placement Leave from January 1, 2015, through the present and provide the following information for each employee:

    a) The date each was placed on Job Placement Leave;

    b) The position he or she held prior to being placed on Job Placement Leave;

    c) The date his or her Job Placement Leave ended;

    d) The reason his or her Job Placement Leave ended; and the position(s) he or she was offered at Norton, if any, during his or her Job Placement Leave.

    (2)    **No later than January 2, 2026**, Defendant shall provide Plaintiff with the code charting for the pediatric incident in January 2023 under the following conditions:

        a)    Defendant shall redact all names, or any personal identifiers of the patient included in the chart before providing the chart to Plaintiff;

        b)    The parties are permitted to use the chart for the purposes of prosecuting or defending this action and any resulting appeals, which includes disclosing the chart to the parties' attorneys, expert witnesses, consultants, court personnel, copy services, trial consultants, and other entities or persons involved in the litigation process;

        c)    The parties and their attorneys are prohibited from using or disclosing these documents for any purpose other than this litigation;

        d)    The parties and their attorneys are required to either return all copies of these documents to Defendant Norton Healthcare, Inc. or destroy them at the conclusion of this litigation;

        e)    If either party files an unredacted copy of the chart with the Court, such party shall do so under seal, and file a redacted version with the Court redacting all names or any personal identifiers of the patient.

    (3)    Both parties shall bear their own costs in supporting and opposing this Motion. (DN 36.)

    (4)    **No later than January 9, 2026**, the parties shall file their jointly proposed deadlines with the Court.

December 17, 2025

cc: Counsel of record

Colin H Lindsay, Magistrate Judge
United States District Court